# EXHIBIT C



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Kansas City, MO**

| | |
|---|---|
| Appeal of: **K. SANDERSON** | OMHA Appeal No.: **3-10150589816** |
| Enrollee: **K. SANDERSON** | Medicare Part: C |
| Medicare No.: **\*\*\*\*\*55CH88** | Before: **LaSandra Morrison**<br>Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, this ALJ enters a **FAVORABLE** decision. The evidence in the record indicates the use of Vetriflex Superion device for this Enrollee meets Medicare coverage requirements and the Plan is required to pre-authorize coverage of the item/service.

## PROCEDURALHISTORY

The Enrollee is an enrolled member of United Healthcare, Part C Medicare Advantage Plan (the Plan). The Enrollee's Medicare Advantage Plan denied the request for pre-authorization coverage of the Vetriflex Superion device procedure for the Enrollee initially and upon redetermination. On June 14, 2021, MAXIMUS Federal Services, the Independent Review Entity with jurisdiction over this matter, issued an unfavorable decision. (File 5). The Enrollee then filed a request for an ALJ hearing on the denied claim.

The undersigned ALJ held a hearing on September 16, 2021, by telephone. Debra Parrish, counsel for the Enrollee, as well as the enrollee appeared at the hearing. The Plan submitted a Position Paper, in lieu of testimony. (File 10). Counsel for the enrollee objected to the admission of this Position Paper as it was not received within five (5) days of the hearing date. This ALJ admitted the Position Paper over that objection. All other exhibits were admitted into evidence. Upon conclusion of argument and testimony, the record was closed and the hearing was concluded.

## ISSUE(S)

Whether the Plan is required to pre-authorize coverage of the Vetriflex Superion device procedure to treat the Enrollee in accordance with the Plan's Evidence of Coverage and Medicare Part C rules and regulations.

## APPLICABLE LAW AND POLICY

Coverage of medical and other health services is qualified by the overarching principles of Social Security Act §1862(a), which provides that Medicare payments will only be made for items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," notwithstanding any other provision of

60

Title XVIII of the Act. *See also* 42 C.F.R. § 411.15(k)(1). MA organizations offering MA plans must provide their enrollees with coverage for all services that are available to beneficiaries residing in the plan's service area and that are covered by Part A and Part B of original Medicare. § 1852(a)(1)(A); 42 C.F.R. § 422.101(a); Medicare Managed Care Manual, pub. 100-16 (MMCM), ch. 4, § 10.2 (Apr. 2016). An MA plan may offer additional coverage as a supplemental benefit but may not limit the original Medicare coverage. § 1852(a)(3); 42 C.F.R. § 422.102; MMCM, ch. 4, § 10.2. MA organizations are required to comply with CMS National Coverage Determinations (NCDs), general coverage guidelines included in original Medicare manuals and instructions, and the written coverage decisions of local Medicare contractors with jurisdiction for claims in the geographic area in which the services ae covered under the MA Plan. 42 C.F.R. §4221.101(b)

A Medicare Advantage Plan must comply with CMS National Coverage Determinations (NCDs), general coverage guidelines from CMS manuals and instructions (unless they conflict with Part C regulations or instructions), and written coverage decisions of local Medicare contractors with jurisdiction (Local Coverage Determinations or LCDs). 42 C.F.R. § 422.101(b). ALJs are not bound by LCDs or CMS program guidance, such as program memoranda and manual instructions, but ALJs "will give substantial deference to these policies if they are applicable to a particular case." 42 C.F.R. § 405.1062(a).

In the absence of an applicable NCD or LCD, CMS offers general guidance for the determination of medical necessity in the *Medicare Integrity Policy Manual. (MPIM)*. The *MPIM* provides the following criteria to assess the reasonableness and medical necessity of a service or item: 1) is it safe and effective; 2) is it not experimental or investigational; and 3) is it appropriate, that is:
- Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;
- Furnished in a setting appropriate to the patient's medical needs and condition;
- Ordered and furnished by qualified personnel;
- One that meets, but does not exceed, the patient's medical need; and
- At least as beneficial as an existing and available medically appropriate alternative.

*MPIM*, ch. 13, § 13.5.4 (effective Oct. 2018); see also 42 C.F.R. § 411.15(o) (stating that experimental and investigative devices are not covered).

There is currently no NCD or LCD that specifically addresses the medical necessity of a procedure for the insertion of interlaminar/interspinous process stabilization/distraction device, without open decompression or fusion, including image guidance when performed, lumbar; single level (CPT Code 22869. However, review of a historical LCD written by another Medicare contractor does offer some guidance regarding coverage and medical necessity for interspinous process decompression procedures. LCD 34006 states:
> Interspinous Process Decompression (IPD®) will be considered medically reasonable and necessary for patients who meet ALL of the following criteria:
> - Aged 50 or older suffering from (intermittent neurogenic claudication) secondary to a confirmed diagnosis of lumbar spinal stenosis.
> - with moderately impaired physical function who experience relief in flexion from their symptoms of leg/buttock/groin pain, with or without back pain; and
> - Patients who have undergone at least 6 months of non operative treatment

This LCD goes on to state that IPD will not be considered medically reasonable and necessary with any of the following conditions:
> - Allergic to titanium or titanium alloy

61

- Spinal anatomy or disease that would prevent implant of the device or cause the device to be unstable in situ, such as significant instability of the lumbar spine, e.g., isthmic spondylolisthesis or degenerative spondylolisthesis greater than grade 1.0 (on a scale of 1 to 4); an ankylosed segment at the affected level(s); acute fracture of the spinous process or pars interarticularis
- Significant scoliosis (Cobb angle greater than 25 degrees)
- Cauda equina syndrome defined as neural compression causing neurogenic bowel or bladder dysfunction
- Diagnosis of severe osteoporosis, defined as bone mineral density (from DEXA scan or some comparable study) in the spine or hip that is more than 2.5 SD below the mean of adult normals in the presence of one or more fragility fractures;
- Active systemic infection or infection localized at the site of implantation
- Body mass index (BMI) > 40kg/m²

Local Coverage Determination L34006: Interspinous Process Decompression (LCD L34006) (Effective Oct. 1, 2015– April 4, 2020).

It is an appellant's burden to provide sufficient information to determine the medical reasonableness and necessity of services. See Act § 1833(e). Finally, the Plan's Evidence of Coverage (EOC) sets out the benefits for enrollees, along with applicable conditions and limitations. (File 2, p. 231-520). The EOC states that the Plan covers all services covered by Original Medicare. (File 2, p. 288).

## FINDINGS OF FACT AND ANALYSIS

The Enrollee is challenging denial of a pre-authorization request for the procedure for placement of the Vetriflex Superion device. The Independent Review Entity determined the requested item was experimental. (File 5, p. 4). Based on this information, the Independent Review Entity determined Medicare rules for coverage of the device had not been met and the Plan did not have to pre-approve the Vertiflex Superion device. The Enrollee contends the procedure is covered by original Medicare and is medically necessary thus must be covered by the Part C Plan.

After a thorough review of the administrative record, and considering the argument provided at the hearing, this ALJ finds the procedure and devices in question are not experimental. At the time of the Enrollee's request, the procedure had been recognized as reasonable and necessary for greater than five years. The interspinal spacer received FDA approval in June 2015, and there is a wealth of medical literature available addressing the safety and efficacy of the procedure.

Furthermore, this ALJ finds these services are reasonable and necessary for this Enrollee.  The evidence submitted by the Enrollee establishes that the services at issue met coverage criteria. Though not controlling, LCD L34006 provides guidance as to what to look for when determining medical necessity for this device. It indicates that use of interspinous process decompression is medically necessary if the following criteria are met: (1) the patient is aged 50 or older suffering from (intermittent neurogenic claudication) secondary to a confirmed diagnosis of lumbar spinal stenosis; (2) the patient has moderately impaired physical function and experiences relief in flexion from their symptoms of leg/buttock/groin pain, with or without back pain; and (3) the patient has undergone at least six months of non-operative treatment. LCD L34006. The Enrollee is greater than 50 years of age with a diagnosis of spinal stenosis with neurogenic claudication. The record further shows the Enrollee suffers from greater than moderately impaired physical function and relief in flexion from these symptoms. Specifically, the Enrollee experiences persistent pain that remains located on the left side of his lower back and will go down the left

62

leg. (File 2, p. 75). The pain is worse with any sort of activity and can be sharp and stabbing at times. *Id*. Within an office visit notes from April 20, 2021, the Enrollee's treating physician indicated that the Enrollee stated that when he is sitting he is somewhat okay, however when he gets up and starts to walk, he experiences symptoms of spinal stenosis with neurogenic claudication. *Id*. During this visit the physician discussed treatment to include back surgery versus the vetriflex device. (File 2, pp. 76, 81). In addition, prior to the current request for pre-authorization the Enrollee has undergone at least six months of non-operative treatment. Specifically, the Enrollee received lumbar transforaminal steroid injections on September 9, 2020; radiofrequency ablation of medial branch nerves (lumbar) on October 5 and 12, 2020; as well as an additional steroid injection on October 12, 2020; and a left sacral joint injection on January 27, 2021. (File 2, pp. 51, 56, 62, 65, 73). In addition, the Enrollee has taken Meloxicam and Tramadol to address his pain. (File 2, p. 67).

The Plan argues in its Position Paper dated September 15, 2021, that the requested use of the Superion Interspinous spacer is not medically necessary and reasonable and thus, as an experimental and investigational device, excluded under Medicare law. (File 10). This ALJ does not find this argument persuasive for the reasons stated above.

Though not controlling, the Enrollee's condition does meet the requirements outlined in the LCD and therefore this ALJ is convinced this procedure is medically reasonable and necessary for the treatment of the Enrollee's severe pain. Based on the foregoing, this ALJ finds that the Enrollee has met his burden of establishing by a preponderance of the evidence that the use of this procedure is appropriate.

## CONCLUSIONS OF LAW

The services at issue for placement of the Vetriflex Superion device is not experimental and is medically reasonable and necessary for this Enrollee. The Plan is ordered to pre-authorize the services.

## ORDER

For the reasons discussed above, this decision is **FAVORABLE.** This ALJ directs the MAO to process the determination in accordance with this decision.


**SO ORDERED**


_____
LaSandra Morrison
Administrative Law Judge