**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KENNETH A. SANDERSON,**

**Plaintiff,** **Case No. 2:22-CV- 02206-JAR-KGG**

**vs.**

**XAVIER BECERRA, AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,**

**Defendant.**

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Comes now Plaintiff, Kenneth A. Sanderson, by and through his attorney, Daniel E. Stuart, of Law Office of Daniel E. Stuart, P.A., and in opposition to Defendants' Motion to Dismiss suggests and states as follows:

The Secretary's motion should be denied. Mr. Sanderson is suffering from an extremely painful back condition which the Superion product/procedure can provide immediate relief from. Medicare is a voluntary insurance program, just like standard third-party health insurance. Mr. Sanderson pays monthly premiums and, in exchange, is entitled to qualifying care/treatment. Mr. Sanderson has paid his insurance premiums but is being jerked around by his Medicare Part C Plan (through UnitedHealthCare) and by the Secretary through simple failure to address his case. All the while, Mr. Sanderson is experiencing debilitating pain.

The statutory deadlines for action long having passed, as pled in the Complaint, this Court should either issue a writ of mandamus or take up the matter substantively and order coverage to alleviate Mr. Sanderson's pain.

The Secretary's effort to drag out the process is unavailing. It is beyond misadventure that this Court has mandamus jurisdiction and, pursuant to the statutes, this Court also has substantive jurisdiction. The Secretary's motion should be denied and, as soon as the certified Record is served, Sanderson will move for summary judgment.

## I. BACKGROUND

Mr. Ken Sanderson is a 72-year-old Kansan, father, grandfather, and husband of nearly 45 years. Mr. Sanderson remains fully employed and, in his free time, serves as a judge with the American Kennel Club, and is also active with his church choir.

Mr. Sanderson was diagnosed with spinal stenosis (a narrowing of the spaces between the vertebrae of the spine resulting in pressure on the spinal cord). This causes extreme pain and impaired physical function. This Court has likely seen people suffering from this condition which results in pain and weakness in the legs.

At issue in this case is a device called the Superion interspinal spacer. This device is inserted through a small incision in the space between two vertebrae in a small/retracted form (like a toggle bolt). Then, the device is opened up and mechanically prevents the vertebrae from getting too close together and putting pressure on the spinal cord. The procedure is performed on an outpatient basis, using a local anesthetic, in a procedure lasting less than 2 hours with minimal blood loss.

The Superion product is FDA approved and has been the subject of multiple scientific studies at two, three, four, and five year follow-ups showing that the Superion product has improved outcomes as compared to other forms of treatment (*e.g.*, a "laminectomy"). The Superion product is a Medicare Part B (*i.e.*, "Original Medicare") covered benefit.

A laminectomy is a much more invasive and permanent treatment conducted under general anesthesia. In a laminectomy, various bone structures in the spine are crushed and removed in order to create space and reduce compression of the spine. As between the Superion product and a laminectomy, the Superion product has been shown to result in better outcomes (e.g., 84% effectiveness at 5 years for the Superion product vs. ~60% for a laminectomy). The Superion product is also associated with a reduction/elimination of the need for opioid pain treatments while opioids are frequently required even after a laminectomy. Further, a Superion treatment is less expensive than a laminectomy.

Medicare Part B is generally described at 42 U.S.C. § 1395ff. Pursuant ¶ (b)(1)(A), thereof, the Secretary is required to provide a "hearing … to the same extent as provided in [42 U.S.C. § 405(b)]" followed by judicial review under § 405(g). Further, the "hearings" required under § 405(g) must be completed with 90 days by the ALJ (§ 1395ff(d)(1)(A)) and any appeal therefrom completed within 90 days by the Medicare Appeals Council (§ 1395ff(d)(2)(A)). In the event that the MAC fails to issue a decision within 90 days, "the party requesting the hearing" (*i.e.*, the party that sought an ALJ hearing) may seek judicial review (§ 1395ff(d)(3)(B)).

In addition to Medicare Part B, Congress has also created Medicare Part C. Rather than the fully government administered program of Medicare Part B, Congress believed that private parties might be able to more efficiently provide the same benefits, which would save the government money. These Plans are provided for in Medicare Part C (aka "Medicare Advantage"). Medicare Part C Plans (like the United Plan that Mr. Sanderson has) are required to cover everything covered by "Original Medicare" but sometimes also provide additional coverage (*e.g.*, dental and vision). *See* 42 U.S.C. § 1395w-22(a)(1)(A) ("shall provide to

members … benefits under the original Medicare fee-for-service program"). The Secretary pays the Medicare Advantage Plans on a *per capita* basis for each insured they sign up and the Plans make money based on the difference between the *per capita* premiums and the cost to administer the program. That being said, both the statute and the contracts the Plans execute with the Secretary require the Part C Plans to cover everything covered by Original Medicare. Thus, Part C Plans cannot just deny claims and pocket the money. Accordingly, participants can choose a Medicare Advantage Plan knowing that that, at a minimum, they will receive the same coverage as under Original Medicare (and perhaps more).

Further, as provided in 42 U.S.C. § 1395w-22(g)(5), the Secretary is required to provide hearings "to the same extent as is provided in § 405(b)" for Original Medicare plans followed by judicial review under § 405(g). Thus, participants choosing a Medicare Advantage Plan know that their right to appeals and hearings will not be lessened as compared to Original Medicare.

The claim/appeal process within Medicare comprises five steps. 1) initial determination; 2) reconsidered determination; 3) reconsideration; 4) an ALJ hearing; and 5) Medicare Appeals Council review. Thereafter, judicial review may follow.

Mr. Sanderson sought pre-approval for the Superion product/procedure and was denied initially by UnitedHealthCare ("United"), denied on reconsidered determination; and denied on reconsideration. Thereafter, in accordance with the statutes, Mr. Sanderson sought a "hearing" before an ALJ. United contended that it was not bound by Medicare's coverage policies and could make up its own and, though the Superion product has been approved by the FDA since 2015, the Superion product was "experimental." However, through the ALJ hearing, ALJ Morrison found favorably for Sanderson ruling, in a decision issued on November 8, 202, that

the Superion product is a Medicare covered device. On January 7, 2022, United sought review by the Medicare Appeals Council on the same grounds it previously asserted.

## II. DISCUSSION

### A. Sanderson's Objection to The Secretary's Exhibits

As an initial matter, Sanderson must object to the exhibits attached to the Secretary's motion because those exhibits reflect yet another failure of the Secretary to comply with his statutory duty and the Local Rules. Pursuant to 42 U.S.C. § 405(g):

> As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

Further, pursuant to Local Rule 83.7.1(c), the Secretary was required to file a copy of the Record with the Clerk when the Secretary served his response to the Complaint. This Court is familiar with the requirement for a certified record. *See, e.g., Christopher G. v. Saul*, 2019 WL 5682891 at *2 (D. Kansas Nov. 1, 2019) (Robinson, J) ("Pursuant to 42 U.S.C. § 405(g), the Court can only review a final decision by the Commissioner and only be reviewing a certified copy of the transcript of the record."). The Secretary complied with neither § 405(g) nor Local Rule 83.7.1(c) and, to date, still has not filed or served a copy of the certified administrative record.

Instead, the Secretary asks the Court to absolve him for the statutory requirement and take judicial notice of the Exhibits. (Motion at 4). This is improper. Without a transcript,

Sanderson is unable to move for summary judgment and the Secretary should not be allowed to unilaterally delay Sanderson's own motions through simple defiance of the statute and Local Rules, while pursuing his own ends. The Secretary's request should be denied and, until the statute and Local Rules have been complied with, the Secretary's motion denied.

**B. This Court Has Jurisdiction**

As an initial matter, the Secretary asserts that this Court lacks jurisdiction. There is absolutely no merit to that claim. In this case, Sanderson seeks a writ of mandamus or in the alternative, an Order of coverage of the Vertiflex product/procedure.

**1. This Court Has Mandamus Jurisdiction**

To date, the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and D.C. Circuits have all held that mandamus relief is available in cases arising under 42 U.S.C. § 405(g) and that such jurisdiction is not barred by § 405(h). *See, Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 765-7 (5th Cir. 2011) (collecting cases). One reason mandamus jurisdiction is not barred by § 405(h) is because § 405(h) only precludes jurisdiction based on § 1331 (federal question) and § 1346 (United States as a defendant) and does not preclude mandamus jurisdiction (28 U.S.C. § 1361).

Like the other Circuits, that is the Rule in the Tenth Circuit. *See, e.g., Bartlett Memorial Medical Center, Inc. v. Thompson*, 347 F.3d 828, 835 (10th Cir. 2003). In the present case, Sanderson has exhausted his administrative remedies and the Secretary owes him a clear, non-discretionary duty to address his claim.

While the actual requirement for exhaustion is more fully addressed below, the Secretary does not dispute that Sanderson has presented his claim and pursued it through receiving a favorable ALJ decision. Likewise, the Secretary does not dispute that Sanderson filed a request

for escalation. Instead, the Secretary argues that Sanderson can do nothing further (*i.e.*, that he simply must wait more than nearly the year that he has so far for action in his case). Thus, as argued by the Secretary, Mr. Sanderson has exhausted his administrative remedies and his only recourse to secure compliance with the statute is this lawsuit. Mr. Sanderson has exhausted his administrative remedies.

Pursuant to the statutes (42 U.S.C. §§ 1395w-22(g)(5); 405(b)), the Secretary must provide "hearings" that result in "final decisions" that may then be judicially reviewed. The Secretary's duty to conduct hearings and issue final decisions is non-discretionary. To the extent that it is contended that the Secretary has not conducted a hearing at the Medicare Appeals Council or issued a "final decision", then those are non-discretionary duties. Accordingly, at an absolute minimum, this Court has mandamus jurisdiction to compel the Secretary to comply with the statutes.[1]

**2. This Court Has Substantive Jurisdiction**

**a) "Hearings to the Same Extent"**

As detailed above, pursuant to 42 U.S.C. § 1395ff(d)(2)(A)/(3)(B), the party requesting an ALJ hearing may proceed directly to district court if the Medicare Appeals Council fails to issue a decision within 90 days. Here, Sanderson followed the applicable regulations and submitted a "request for escalation", to which the Secretary failed to respond.[2] Accordingly,

---

1 In this regard, mandamus jurisdiction is a corollary to proceeding under the Administrative Procedure Act. *See* 5 U.S.C. § 706(1) ("compel agency actions unlawfully withheld or unreasonably delayed").

2 Respectfully, the Secretary cannot impose additional restrictions on jurisdiction of the district court. That is a power of Congress expressed in the statutes. Thus, the Secretary's "escalation" regulations are, at best, optional or another route to receiving a "final" decision.

Sanderson has exhausted his administrative remedies and, pursuant to the statutes and regulations has properly filed suit.

The Secretary's motion is premised on two things: 1) the idea that the Secretary can change the statutory language through regulations; and 2) the idea that the Secretary can provide hearings to a different extent in Original Medicare as compared to Medicare Advantage. (Motion at 6-7). Those are both flawed notions.

First, §§ 1395ff(d)(1)(A) and 1395ff(d)(2)(A)/(3)(B) speak of "the party requesting the hearing" (*i.e.*, the ALJ hearing). However, the Secretary's regulations seek to change this phrase to the term "appellant" and also change it to the party appealing the ALJ decision. *See* 42 C.F.R. 405.1132 ("the appellant may request that the appeal"). Clearly, the Secretary does not have the power to change the statutory language. Accordingly, either the regulation is inoperative or the term "appellant" must be read to mean "the party requesting the [ALJ] hearing." In this case, Mr. Sanderson was the party requesting the ALJ hearing and, therefore, he properly followed both the regulation and statute.

Second, citing 42 C.F.R. § 422.562(d)(2), the Secretary contends that he has issued regulations precluding the application of his "escalation" procedure to Medicare Advantage cases. That is, the Secretary contends that the hearings provided to Original Medicare insureds are of a different extent than those provided to Medicare Advantage insureds. Clearly, a "hearing" which includes the right to a timely decision (and immediate judicial review if not) is a different "hearing" than one where years may pass without a decision while the insured continues to suffer. Such a notion conflicts with the Secretary's interpretation of "hearings" under § 405(b) for Original Medicare (§ 1395ff) and that same phrase in Medicare Advantage (§

1395ww-22). Differential "hearings" are not "hearings to the same extent" and, therefore, a differential hearing policy violates the statute.

Moreover, such an approach would be inconsistent with the Congress policy goal of having people use the Medicare Advantage program. If Medicare Advantage insureds actually had *less* "hearing" or coverage rights than Original Medicare insureds, then insureds would not choose the Medicare Advantage program Congress believes will save money.[3]

Accordingly, because Sanderson followed the properly construed procedure and/or because the Secretary cannot change the statutory regulation, again, Sanderson has exhausted his administrative remedies and this Court has jurisdiction.

**b) Independent Exhaustion**

While the Secretary's motion cites some 22 cases, remarkably, the Secretary never cites one for the proposition that exhaustion of administrative remedies is a jurisdictional requirement. Perhaps that is so because there is none.

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction over "final" decisions of the Secretary. As explained by the Supreme Court, there are two components to § 405(g) "finality": 1) a non-waivable "presentment" component; and 2) a waivable exhaustion component. *See Mathews v. Eldridge*, 424 U.S. 319, 329 (1976). With respect to the waivable exhaustion component, that can be waived either by the Secretary or by the Court.

Whether exhaustion should be waived is an "intensely practical" inquiry guided by the policies underlying the exhaustion requirement: 1) preventing premature interference with agency processes to allow efficient functioning and self-correction; 2) to afford the parties and

---

[3] According to third party studies, approximately half of all Medicare participants are on Medicare Advantage plans. *See* https://www.kff.org/medicare/issue-brief/medicare-advantage-in-2022-enrollment-update-and-key-trends/.

courts the benefit of agency expertise; and 3) to compile a record adequate for judicial review. *See Bowen v. City of New York*, 476 U.S. 467, 484-5 (1984). As noted by the Court there, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id*.

Applying those principles to this case, even if the Court concludes that Sanderson has not exhausted, then the exhaustion should be waived. First, there is nothing "premature" here. Sanderson has been waiting (in constant pain) for nearly a year for the Medicare Appeals Council to address United's appeal of the ALJ decision rendered in Sanderson's favor. Second, there is no agency "expertise" that the Court will benefit from. At issue here is what the statutes require and the agency has no "expertise" in that regard. Further, the gravamen of United's appeal is that, while Original Medicare covers the Superion product, United can apply its own policies to come to a different conclusion and deny Superion coverage. Of course, that position is directly contrary to the statute (42 U.S.C. § 1395w-22(a)(1)(A)) and would undermine the entire premise of the Medicare Advantage program.

In addition, the record is adequate for judicial review as United has submitted no evidence regarding the Superion product, only its legal argument challenging the premise of the Medicare Advantage program. Finally, Sanderson has a compelling interest in having the issue resolved "promptly" rather than indefinite delay while the Secretary simply fails to perform his statutory duty.

With waiver of further exhaustion, this Court has substantive jurisdiction.

## III. CONCLUSION

For the reasons set forth above, the Secretary's motion should be denied.

WHEREFORE, for the reasons stated herein, the Plaintiff respectfully requests the Court deny Defendants Motion to Dismiss, and such further and other relief as the Court deems just and proper.

Respectfully Submitted,

LAW OFFICE OF DANIEL E. STUART, P.A.

/s/ Daniel E. Stuart
Daniel E. Stuart KBN 16490
Charles A. Edgeller KBN 17531
4707 College Boulevard, Suite 208
Leawood, Kansas 66211
(913) 338-4500
(913) 338-4501 Telefacsimile
dan@stuartlaw.net
charlie@staurtlaw.net
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the Court's cm/ecf electronic filing system on this 18th day of October, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's electronic filing system.

/s/ Daniel E. Stuart
Daniel E. Stuart
LAW OFFICE OF DANIEL E. STUART, P.A.